MARY EVELYN McBRIDE v. NORMA GOODNIGHT FREEZE, Executrix of the Estate of MARVIN AMBROSE GOODNIGHT, Defendant, and ROBERT HOOVER BUTLER, Additional Defendant.

(Filed 14 December, 1966.)

**1. Automobiles § 17—**
    Electric traffic control signals have a recognized meaning, and while a driver faced with the green light is permitted to proceed into the intersection, the green light is not a command to go but a qualified permission to do so, and such driver remains under the fundamental duty of using due care.

**2. Automobiles § 41g—**
    Plaintiff's evidence was to the effect that the vehicle in which she was a passenger was in a funeral procession, that it was standing or moving slowly almost in the middle of a busy intersection with its lights burning in the middle of the afternoon, that the car entered the intersection on the green light, that upon the changing of the lights, defendant's car entered the intersection from the intersecting street on the "go" light, and that plaintiff's car was struck on its left side by the automobile driven by defendant. *Held:* Nonsuit was improperly entered, since defendant, in the exercise of reasonable diligence, should have seen the standing vehicle and acted accordingly.

McBride *v.* Freeze.

Appeal by plaintiff from *May, S.J.,* at the March 1966 Session of Rowan County Superior Court.

The plaintiff seeks to recover damages for personal injuries and property damages alleged to have been sustained by her, resulting from a two-car intersectional collision. The original defendant, Goodnight, died before the case came to trial, and his executrix assumed the defense.

The plaintiff alleges and offers evidence tending to show that on 27 September, 1961, at approximately 2:30 P.M., she was a passenger in the left rear seat of her automobile, going west in a funeral procession in the city of Salisbury. Her car was struck in the left side by an automobile driven by the defendant at the corner of Innis and Lee Streets. Plaintiff's evidence shows that the funeral procession was being escorted through the city by a policeman and at the time of the collision her car was about one or two car lengths behind the preceding car and that her headlights were on. Plaintiff's car entered the intersection on a red traffic light and was stopped or moving slowly through the intersection at the time of the impact. It is admitted that the defendant, going north on Lee Street, entered the intersection on a green light. There was a car directly behind the plaintiff's car and that car had its headlights on.

The plaintiff offered Article VII, Sec. 10-53 of the City Code of Salisbury which reads as follows: "Driving through funeral processions. No vehicle shall be driven through a funeral procession except Fire Department vehicles, Police vehicles and Ambulances when the same are responding to calls (1941)."

She also offered evidence of her injuries and damage.

In his answer the defendant alleged that he was without knowledge that plaintiff's car was in a funeral procession; that said automobile gave no notice that it was a part of a funeral procession; that it had no lights burning that were visible to the defendant and was not proceeding close behind any other automobile as a part of a procession.

As a further defense the defendant alleges that he entered the intersection when the traffic signal for his street was green or "Go". He filed a cross-complaint against the driver of the plaintiff's automobile alleging that if the defendant was liable in any respect then the cross-defendant was guilty of negligence which was the proximate cause of the collision and injury and damage suffered by the plaintiff.

At the close of plaintiff's evidence the trial judge granted defendant's motion for nonsuit.

Plaintiff appealed.

*John D. Warren for plaintiff appellant.*
*Shuford, Kluttz & Hamlin for defendant appellee.*
*Woodson, Hudson & Busby for additional defendant.*

PLESS, J.   Innis Street is described in the plaintiff's evidence as the main street running east and west in the city of Salisbury, and the scene of this accident was at its intersection with Lee Street near the "Square". During the trial the plaintiff drew a diagram of the intersection and placed her car at the time of the collision. It was over a third through the intersection with its front about the center of Lee Street. While the evidence showed that the defendant entered the intersection on a green light, we think the following excerpt from *Morris v. Johnson,* 246 N.C. 179, 97 S.E. 2d 773, is applicable here: "* * * the collision occurred at or near the center of the intersection. It is not asserted that the view of the drivers was obstructed. The jury might find from the evidence that one of the vehicles negligently entered the intersection when warned not to do so by a red light, but the operator of the other vehicle, by exercising a proper lookout, could and should have seen the disobedience to the signal command in time to avoid the collision. If so, the failure to maintain a proper lookout proximately causing damage created liability."

In many of our decisions the Court has dealt with the legal effect of traffic lights. In *Hyder v. Battery Co.,* 242 N.C. 553, 89 S.E. 2d 124, the Court quoted with approval the rule stated in 60 C.J.S. 855: " 'A green traffic light permits travel to proceed and one who has a favorable light is relieved of some of the care which otherwise is placed on drivers at intersections, since the danger under such circumstances is less than if there were no signals. * * * However, a green or "Go" signal is not a command to go, but a qualified permission to proceed lawfully and carefully in the direction indicated. In other words, notwithstanding a favorable light, the fundamental obligation of using due and reasonable care applies.' "

In *Funeral Service v. Coach Lines,* 248 N.C. 146, 102 S.E. 2d 816, Judge Rodman, speaking for the Court, said: "The use of traffic lights is so general and the meaning of each color so well understood that one who operates his motor vehicle in disregard of these well-understood meanings cannot be said to be a prudent person; one who operates in accord with these meanings is not to be condemned for so doing. 'A red light is recognized by common usage as a method of giving warning of danger * * *.' *Weavil v. Trading Post,* 245 N.C. 106, 95 S.E. 2d 533. 'A green or "Go" signal is not a command to go, but a qualified permission to proceed lawfully and carefully in the direction indicated.' "

*Sloss-Sheffield Steel & Iron Co. v. Allred,* 25 So. 179, states the Alabama ruling in a case quite similar to this, which was approved by this Court in *Cogdell v. Taylor,* 264 N.C. 424, 142 S.E. 2d 36: " 'If the car of plaintiff was in a funeral procession and this was reasonably apparent to the public, then it had the right to enter the intersection on the red light by virtue of Section 5920 of the City Code dealing with driving through a procession.' Again: 'So far as the defendant is concerned, the green light did not authorize the driver of its truck to enter the intersection and drive through the funeral procession if the driver either knew or from the surrounding facts and circumstances should have known that a funeral procession was passing through the intersection.' "

Taken in the light most favorable to the plaintiff a car sixteen or eighteen feet long is standing almost in the middle of a busy intersection with its lights burning, in the middle of the afternoon. To say that a person in the exercise of reasonable diligence would not be expected to see it, and to act accordingly, is, in our opinion, incorrect.

The case should have been submitted to the jury. In sustaining the defendant's motion for judgment as of nonsuit the court erred, and the judgment is hereby

Reversed.